UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | No. 24-CR-48 (APM) |
| DAVID KENNER, | : | |
| Defendant. | : | |

## UNITED STATES' SENTENCING MEMORANDUM

The Defendant, David Kenner, violated a clear protective order issued by a Judge of this Court, leaking discovery materials – including grand jury materials – to the news media, resulting in their publication on the eve of a criminal trial. Such outrageous conduct disrupts the orderly administration of justice in criminal cases and betrays the profession of law and the role of lawyers as officers of the court. It must be taken seriously and called out as the criminal conduct it is. However, given the Defendant's personal circumstances and the near certainty that he will not be in a position to re-offend, consistent with the plea agreement between the Parties, the United States submits that the Defendant's forthcoming criminal conviction, and a term of unsupervised probation, is sufficiently punitive, and an appropriate resolution of this matter.

### I.  The Contempt Statute and the Defendant's Contemptuous Conduct

#### a.  Elements of the Offense

"A conviction for criminal contempt is authorized under 18 U.S.C. § 401(3) upon proof beyond a reasonable doubt of 1) a reasonably specific order; 2) violation of the order; and 3) the willful intent to violate the order. *United States v. Hassell*, 128 Fed. App'x 411, 411 (5th Cir. 2005) (internal citations omitted). Reckless conduct is sufficient to demonstrate willfulness.

*Sykes v. United States*, 444 F.2d 928, 930 (D.C. Cir. 1971) ("By definition, contempt is a 'wilful disregard or disobedience of a public authority'. . . . The requisite intent may of course be inferred if a lawyer's conduct discloses a reckless disregard for his professional duty."); *In re Levine*, 27 F.3d 594, 596 (D.C. Cir. 1994) ("As to the second element of the subsection 401(3) violation— willfulness—we conclude that a fair-minded and reasonable trier of fact could find beyond a reasonable doubt that Levine acted willfully. '[W]illfulness may be inferred if a lawyer's conduct discloses a reckless disregard for his professional duty.'").

### b. The Defendant's Conduct

From July 12, 2021, to August 27, 2023, the Defendant was counsel of record for defendant Prakazrel Michel in *United States v. Prakazrel Michel*, 19-cr-148 (CKK) in the United States District Court for the District of Columbia.  As counsel of record, he was provided discovery materials by the United States.  On May 14, 2019, the Court entered a Protective Order in *United States v. Prakazrel Michel*, binding the defense team.

There can be no doubt that the Protective Order is reasonably specific.  It:

(1) Prohibits disclosure of discovery materials in that case to anyone other than "(i) the defendant; (ii) the defendant's attorney . . .; (iii) employees or agents of those attorneys; (iv) witnesses . . .; and (v) translators, third-party service providers, consultants, experts, or investigators assisting in . . . this case."

(2) Requires that, "[b]efore first disclosing discovery material or its contents to any of the individuals or entities [listed as items (i) through (v) above] the defendant or his attorneys of record must give to the individual or entity a copy of this Order, and maintain a copy signed and dated by the individual or a representative of the entity until such time as all appeals in this matter (if any) are concluded."

(3) States that, "No discovery material shall be provided to any individual or entity except as provided herein . . . or as further ordered by the Court. Nor shall the contents of any discovery material be disclosed, in any other manner, to any individual or entity except as provided in this Order . . . or as further ordered by the Court. The defendant [and] defendant's attorneys of record . . . shall not disseminate copies of the discovery material or allow copies of any kind to be made by any other person."

(4) Limits, the use of discovery to "preparation, trial, direct appeal (if any), and collateral attack (if any) of this case and for no other purpose whatsoever," and provides for "enforcement" through "sanctions or contempt."

Likewise, there is no doubt the Defendant knew of and understood the Protective Order, and its requirements, and as counsel of record, and an officer of the Court, he understood that he was bound to comply with it.

In late November 2022, the Defendant was introduced to two members of the news media from Bloomberg Media.  According to the Defendant, he met with them because he was attempting to obtain information with regard to a particular aspect of the government's case. Defendant understood that the members of the news media had been investigating the underlying facts and circumstances for years prior to Defendant's involvement in the case and that the members of the news media had information which could be helpful in Defendant's defense of Mr. Michel.

In early December 2022, the Defendant agreed to share discovery materials with the two members of the news media and asked them to sign a copy of the Protective Order, which they did.  Shortly thereafter, the members of the news media ripped up the Protective Order, in the presence of the Defendant, and expressed concerns with having signed it.

Contemporaneous with this conversation – and all evidence known to the Government indicates this occurred after the Protective Orders were destroyed – an individual acting with the Defendant's authorization arranged for the members of the news media to be given access to the online database procured by the defense team to hold the discovery materials, including grand jury materials disclosed in discovery.  As the Defendant agrees, he did not take any proactive steps to prevent them from obtaining access or to withdraw his authorization – and indeed, the Government submits that the evidence would show, had this case gone to trial, that any finder of fact would

infer from this sequence of events that the Defendant authorized and knew of the continuing access after the Protective Orders were destroyed.

Between December 14, 2022, and March 3, 2023, the two members of the news media accessed hundreds of documents within the discovery materials via the defense database dozens of times.  And, on January 12, 2023, the Defendant received an invoice for the management of the database holding the discovery materials, and the invoice reflected use of the database by the two members of the news media.

On March 2, 2023, the members of the news media published multiple articles containing information derived from the discovery materials and reflecting the discovery materials' content. (Had the case proceeded to trial, the government's evidence would have shown that the Defendant participated in a conference call with the members of the news media to review the substance of their forthcoming articles, which (as the articles themselves reflect) were based in substantial part on the discovery materials.)  The articles, as the Parties agree, were unrelated to the "preparation, trial, direct appeal (if any), and collateral attack (if any)" in *United States v. Prakazrel Michel.*

On March 3, 2023, the Defendant represented to the Court in *United States v. Prakazrel Michel*, 19-cr-148, that:

> "[i]n furtherance of the Defense investigation into the facts of the case, we have shared some limited information only after the Protective Order was signed or acknowledged.  In those limited instances, the recipient of any information has acknowledged to be bound by the terms of the Protective Order … The authors of [the article containing discovery material] have been conducting their own investigation for some time into areas covered by the Protective Order.  In order to access their information to further the Defense

investigation, they were acting as agents of the Defense as set forth in the Protective Order."

The Defendant failed to disclose to the Court in *United States v. Prakazrel Michel* that the members of the news media had destroyed their copies of the Protective Order before being given access to the discovery materials, in contravention of the Protective Order's requirements.

**II.     The Applicable Sentencing Guidelines and Factors Set Forth in 18 U.S.C. § 3553(a)**

To determine an appropriate sentence, the Court must first accurately calculate the defendant's advisory Sentencing Guidelines range. *Gall v. United States*, 552 U.S. 38, 49-50 (2007). Given that the crime of conviction is misdemeanor contempt in violation of 18 U.S.C. § 401(3) is a Class B misdemeanor, the parties agree that the Sentencing Guidelines do not apply.

After the Court accurately calculates the defendant's advisory Guidelines range, it should consider the various factors set forth in 18 U.S.C. § 3553(a). *Gall*, 552 U.S. 38 at 49-50 (2007). These factors include the nature and circumstances of the offense; the history and characteristics of the defendant; and the need for the sentence to promote respect for the law, just punishment, and adequate deterrence. 18 U.S.C. § 3553(a). The United States submits that these factors are mitigating, and a sentence of unsupervised probation is appropriate and not greater than necessary to comply with the purposes set forth in 18 U.S.C. § 3553(a) (2).[1]

---

[1] Although the factual circumstances of contempts of court vary widely and each is – as this Court recently noted – often *sui generis*, the government notes several other instances in which sentencing courts have deemed probation an appropriate sentence. *See, e.g.*, *Frank v. United States*, 395 U.S. 147, 152 (1969) (discussing probationary sentences in Section 401 contempt cases, generally); *United States v. Camil*, 497 F.2d 225, 226 (5th Cir. 1974) (for Section 401(1) "contempt committed in the actual presence of the court in the course of an unruly outbreak in the courtroom," the district court held that "[i]mposition of sentence was suspended with unsupervised probation to continue for the duration of the trial"); *United States v. Juror No. One*, 866 F. Supp. 2d 442, 443 (E.D. Pa. 2011) (for "juror misconduct by unauthorized use of e-mails during

The Defendant accepted responsibility for his conduct prior to issuance of the show cause order.  He is also 82 years old and has some health concerns.    He has agreed to self-report to the bar as appropriate and has represented that he is winding down his practice of law – and thus will be without opportunity to reoffend in this manner.  In short, although his offense caused and risked serious harm to the judicial process in the underlying case, in itself and with this criminal conviction alone, the offense was also a self-inflicted wound: a significant harm to his professional reputation, his livelihood, and his life.

His conduct showed a lack of respect for the properly-issued orders of this Court, and disrespect for the due administration of justice (which requires the confidential exchange of discovery between counsel as officers of the court).  However, here, the criminal conviction and admission of culpability in this serious matter is a sufficient punishment, not least because it will put others on notice that violation of such discovery protective orders can and does bring with it criminal prosecution, conviction, and related consequences. The deterrent effect of a conviction alone is significant – as conviction carries a significant risk of incarceration, although not recommended by the Government here only because of the Defendant's age, health, and expected retirement from legal practice.

---

deliberations in a criminal trial," *i.e.*, emailing other jurors her views even though she was not part of the deliberating jury, defendant was convicted of contempt and sentenced to a $1,000 fine without incarceration or supervision); *In re Pollack*, No. 07-MC-347 (ARR), 2008 WL 4327000, at *4 (E.D.N.Y. Sept. 22, 2008) (defendant sentenced to unsupervised probation).

**III.     Conclusion**

For the reasons set forth above, the Government asks the Court to sentence the defendant to a

term of unsupervised probation consistent with the plea agreement between the Parties.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:     */s/ Elizabeth Aloi*
Elizabeth Aloi
Jonathan Hooks
D.C. Bar. 1015864 (Aloi)
Assistant United States Attorneys
601 D Street, N.W.
Washington, D.C. 20530
(202) 695-0610 (Aloi)
Elizabeth.Aloi@usdoj.gov